NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA WRIGHT, : | |
| : | |
| Plaintiff, : | |
| v. : | Civil Action No. 15-3965 (ES) |
| : | |
| COMMISSIONER OF SOCIAL SECURITY, : | OPINION |
| : | |
| Defendant. : | |

SALAS, DISTRICT JUDGE

Before the Court is an appeal filed by Theresa Wright ("Plaintiff") seeking review of Administrative Law Judge Dennis O'Leary's (the "ALJ" or "ALJ O'Leary") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and/or Title XVI of the Social Security Act (the "Act"). The Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has considered the submissions in support of and in opposition to the present appeal, as well as the administrative record, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. BACKGROUND

A. Procedural History

Plaintiff, a 49-year-old woman, filed an application for DIB on December 15, 2008, alleging disability as of August 4, 2008, due to herniated discs, asthma, pain, and obesity. (D.E. No. 6, Administrative Record ("Tr.") at 142-43). The Commission denied the application initially

and on reconsideration. (*Id.* at 73-77, 79-81). On September 19, 2011, Administrative Law Judge Barbara Dunn ("ALJ Dunn") held a hearing. (*Id.* at 36-70). On October 28, 2011, ALJ Dunn denied Plaintiff's application. (*Id.* at 20-35). Plaintiff sought Appeals Council review. (*Id.* at 17-19). On August 31, 2012, the Appeals Council concluded that there were no grounds for review. (*Id.* at 4-6). Plaintiff thereafter sought relief from the District Court.

On June 27, 2014, this Court affirmed ALJ Dunn's residual functional capacity ("RFC") determination and obesity analysis, but remanded the matter for a step-three analysis that considered whether the combination of Plaintiff's impairments is medically equal to any listed impairment. (*Id.* at 461-81).

On remand, ALJ O'Leary held a de novo hearing on January 14, 2015. (*Id.* at 429-55). ALJ O'Leary and Plaintiff's counsel agreed that the period under review was a closed period from August 4, 2008 to September 1, 2012. (*Id.* at 433). Plaintiff had also filed successful subsequent applications for DIB and Supplemental Security Income ("SSI") on September 4, 2012, and September 10, 2012, with an onset date of September 1, 2012. (*Id.* at 484). Additionally, Plaintiff supplemented the record with opinion evidence from Plaintiff's primary care physician, Michael Pariziale, M.D. (*id.* at 551-52), and from her treating psychiatrists, Frank Ostella, D.O. (*id.* at 553-54) and John Cooke, M.D. (*id.* at 555-56). On March 18, 2015, ALJ O'Leary found that Plaintiff was not disabled for the closed period. (*Id.* at 407-23). Plaintiff sought Appeals Council review, and on May 18, 2015, the Appeals Council again found no grounds for review. (D.E. No. 8, Brief in Support of Theresa I. Wight ("Pl.'s Br.") at 2; D.E. No. 9, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def.'s Br.") at 3).

On June 12, 2015, Plaintiff appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1). The Court received the administrative record on October 2, 2015.

(D.E. No. 6). The parties briefed the issues raised by Plaintiff's appeal. (*See* Pl.'s Br.; Def.'s Br.). The matter is now ripe for resolution.

## II.  LEGAL STANDARD

### A.  Standard for Awarding Benefits

To be eligible for DIB under Titles II and XVI of the Act, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). A claimant seeking DIB must also satisfy the insured status requirements set forth in § 423(c). Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If at any point in the sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the inquiry ends. *Id.* The burden rests on the claimant to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).[1] At step five, the burden shifts to the Commissioner. *Id.*

***Step One.*** At step one, the claimant must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§

---

[1]  Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

416.972(a), (b).  If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience.  20 C.F.R. § 404.1520(b).  If the claimant demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

*Step Two.*  At step two, the claimant must demonstrate that her medically determinable impairment or the combination of impairments is "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold.  *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

*Step Three.*  At step three, the ALJ must assess the medical evidence and determine whether the claimant's impairment or combination of impairments meet or medically equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  Upon a finding that the claimant meets or medically equals a listing, the claimant is presumed to be disabled and is automatically entitled to benefits.  20 C.F.R. § 416.920(d).

When evaluating medical evidence in step three, an ALJ must give controlling weight to and adopt the medical opinion of a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Not inconsistent does not mean that the opinion must "be supported directly by all of the other evidence [i.e., it does not have to be consistent with all the other evidence] as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."  *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006).  Even where the treating

4

physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If there is conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.*

***Step Four.*** If a claimant is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work she has done in the past, the analysis proceeds.

***Step Five.*** In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on her RFC and vocational factors. 20 C.F.R. § 404.1520(a)(4)(v).

### B. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Although substantial evidence requires "more than a mere

scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### III.   ALJ O'LEARY'S DECISION

ALJ O'Leary applied the five-step disability evaluation process required by 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) and determined that Plaintiff was not disabled under the Act. (Tr. at 413-23). The ALJ also found that Plaintiff last met the insured status requirements of the Act on December 31, 2012. (*Id.* at 413).

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity for the closed period at issue. (*Id.*). The ALJ noted that Plaintiff worked after the alleged disability

6

onset date of August 4, 2008, but the work did not rise to the level of substantial gainful activity. (*Id.*).

At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity, lumbar radiculopathy, lumbar and cervical degenerative disc diseases, major depressive disorder, and asthma. (*Id.*).

At step three, the ALJ determined that for the closed period at issue, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 413-17). The ALJ concluded that "examination of the claimant's impairments individually shows that no one impairment is even close to meeting a listing." (*Id.* at 416). Specifically, the ALJ found that (i) there was no evidence of nerve root compression, spinal arachnoiditis, spinal stenosis, or inability to ambulate effectively as required to meet Listing 1.04 for disorders of the spine (*id.* at 414); (ii) the frequency of Plaintiff's asthma attacks was insufficient to meet Listing 3.02 or 3.03 (*id.*); and (iii) Plaintiff's mental impairment did not cause marked limitations in the relevant criteria to meet or medically equal Listing 12.04 for affective disorders (*id.* at 414-15).

The ALJ then considered whether the combination of Plaintiff's impairments, including obesity, met or medically equaled the severity of a listing. (*Id.* at 416). He concluded that "even when obesity is considered in combination with the claimant's other impairments, the claimant did not equal or meet any of the applicable listings." (*Id.*).

Next, the ALJ addressed the new medical opinion evidence submitted by Plaintiff and ultimately afforded little weight to these opinions under 20 C.F.R § 404.1527. (*Id.* at 417). The ALJ explained that the "recently received evidence from Dr. Parziale, Dr. Ostella, and Dr. Cooke consists of opinion statements and does not offer anything new that would establish that the

7

claimant's impairments, considered in combination, equal or meet any of the listed impairments during the period at issue." (*Id.*).

At step four, the ALJ evaluated Plaintiff's claims and ultimately adopted ALJ Dunn's decision on the RFC, finding that "claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b)." (*Id.* at 27-29, 418-21). He concluded that the evidence did not indicate that Plaintiff's obesity resulted in a disabling limitation of functioning during the closed period at issue. (*Id.* at 420). Additionally, ALJ O'Leary stated that because this Court previously affirmed ALJ Dunn's RFC determination, the law-of-the-case doctrine applied, precluding him from considering the new medical opinion evidence in the RFC determination. (*Id.*). ALJ O'Leary nevertheless noted that "even if I did consider [the new medical opinion evidence] for the purposes of RFC analysis, I find that they deserve little weight under 20 CFR 404.1527, since they are inconsistent with the other medical evidence in the record and with the claimant's activities." (*Id.* at 421). The ALJ determined that Plaintiff could perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and was unable to return to any past relevant work. (*Id.* at 421-22).

At step five, the ALJ concluded that based on Plaintiff's RFC and the testimony of the vocational expert in the hearing before ALJ Dunn, there were jobs that existed in significant numbers in the national economy that claimant could have performed, including decal applier, collator, and microfilm mounter. (*Id.* at 422-23).

Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Act, during the period from August 4, 2008 to September 1, 2012. (*Id.* at 423).

## IV.  DISCUSSION

On appeal, Plaintiff argues that ALJ O'Leary's decision is not supported by substantial evidence.  Specifically, Plaintiff contends that the (i) ALJ fixed an incorrect date last insured ("DLI"), resulting in erroneously omitting new evidence from the record (Pl.'s Br. at 13-14); and (ii) ALJ's step three and four determinations are not based on substantial evidence (*id.* at 22-32). Plaintiff asks the Court to reverse the Commissioner's final administrative decision and order the payment of benefits.  (*Id.* at 10).  In the alternative, Plaintiff asks the Court to remand this case to the Commissioner for a new hearing and a new decision.  (*Id.* at 10, 33).  For the reasons stated below, the Court rejects Plaintiff's contentions.

### A. Plaintiff Waived Her Right to Appeal the Incorrect DLI and to Introduce New Evidence into the Record

ALJ Dunn, who issued the original decision, found that Plaintiff's DLI was December 31, 2012. (Tr. at 25).  ALJ O'Leary, who issued the decision that is presently before the Court, also found that Plaintiff's DLI was December 31, 2012.  (*Id.* at 413).  Plaintiff contends that the correct DLI was December 31, 2014.  (Pl.'s Br. at 11).  As Defendant points out, Plaintiff's counsel represented at the hearing on remand that the period under consideration was a closed period from August 4, 2008 through September 1, 2012.  (Def's Br. at 14; *see also* Tr. at 438-39).  Plaintiff now argues—for the first time in this four-year-old case—that by fixing an incorrect DLI, the ALJ incorrectly proceeded as if evidence from Plaintiff's *subsequent* successful application and any other evidence after December 31, 2012 "was necessarily immaterial because it represented the state of plaintiff's condition after her DLI expired."  (Pl.'s Br. at 13-14).  As such, Plaintiff asserts, "[n]ew and material evidence from a subsequent award of benefits was kept out of the record." (*Id.* at 16).  Plaintiff's argument fails for multiple reasons.

9

First, Plaintiff failed to raise the issue of the incorrect DLI before both ALJs and in her first civil action in this Court. The law is clear that issues raised for the first time on appeal are waived, absent exceptional circumstances. *United States v. Lockett,* 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review . . . absent exceptional circumstances."); *see also Martelli v. Colts Neck Golf & Country Club*, No. 14-8101 FLW, 2015 WL 5032621, at *8 (D.N.J. Aug. 25, 2015) (declining to consider issue raised for the first time on appeal). Plaintiff does not identify any exceptional circumstances to warrant review of an issue first raised on this appeal. Indeed, the record reflects that Plaintiff was represented by counsel at both hearings and in her first appeal to this Court. (Tr. at 23, 411, 458-60). Accordingly, Plaintiff's arguments relating to her incorrect DLI are deemed waived.

Second, Plaintiff contends that more recent evidence from a subsequent successful application would suggest that Plaintiff had a slowly developing disability. (Pl.'s Br. at 16). Plaintiff alleges that "evidence[] from 2013 and 2014 was omitted from consideration and barred from the record due to a simple but significant error in the record." (*Id.* at 14). But Plaintiff made no attempts to submit any such evidence into the record before the ALJs or this Court. To the contrary, Plaintiff's brief states that "Plaintiff here does not speculate regarding the precise content of that excluded evidence." (Pl.'s Br. at 15). The law is clear, however, that "evidence that [is] not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Here, ALJ O'Leary noted that "there is no reason why the District Court or Judge Dunn did not have that information, since it was readily available at the time of the initial hearing." (Tr. at 421). And ALJ O'Leary nevertheless allowed Plaintiff's request to supplement the record with opinion

10

evidence from Plaintiff's primary care physician, Dr. Pariziale, and from her treating psychiatrists, Dr. Ostella and Dr. Cooke. (*See* Tr. at 551-56; *see also id.* at 435 ("ALJ: . . . So I'm going to let you, in effect, supplement the record. ATTY: It's already been supplemented. I just want to point out the two or three things.")). Further, Plaintiff's brief cites no additional evidence that should have been considered; it only concludes that the excluded hypothetical evidence was "sufficiently compelling." (Pl.'s Br. at 15). Although the Court recognizes that there was a successful subsequent application, the Court's review is confined to the record in the present appeal and to the evidence that was presented to ALJ O'Leary. As such, Plaintiff's arguments relating to the exclusion of speculative evidence are also deemed waived.

Moreover, this Court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Woolfolk v. Comm'r of Soc. Sec.,* 89 F. App'x 766, 768 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). For new evidence to be material to a determination of disability for a closed period, the evidence must "relate to the time period for which the benefits were denied, and that it not concern evidence of a later-acquired disability or of the *subsequent* deterioration of the previously non-disabling condition." *Id.* at 786; *see also Plaza v. Barnhart*, 218 F. App'x 204, 207 (3d Cir. 2007) ("A favorable decision on an application for a later time period plainly does not relate to [plaintiff's] condition during the time period at issue in this case."). Here, Plaintiff alleges that the ALJ erred when "[n]ew and material evidence from a subsequent award of benefits was kept out of the record." (Pl.'s Br. at 16). But ALJ O'Leary and Plaintiff's counsel agreed that the period under review was a closed period from August 4, 2008 to September 1, 2012. (Tr. at 433). And the law is clear that evidence of the subsequent deterioration of the previously non-disabling condition or a favorable decision on an

11

application at a later time period does not relate to a plaintiff's condition during the time period at issue. *Woolfolk*, 89 F. App'x at 768; *Plaza*, 218 F. App'x at 207. So, while Plaintiff's evidence from her subsequent application may have established her disability as of September 1, 2012 (Tr. at 433), that evidence is immaterial to whether Plaintiff was disabled before September 1, 2012.

For these reasons, the Court finds that even if the ALJ incorrectly fixed the Plaintiff's DLI, evidence from Plaintiff's subsequent application is immaterial to the disability determination for the closed period from August 4, 2008 to September 1, 2012. Therefore, to the extent that the DLI of December 31, 2012 may be erroneous, the error is harmless and "would have had no effect on the ALJ's decision." *Perkins*, 79 Fed. App'x at 515.

## B. The ALJ's Step-Three Analysis Is Supported by Substantial Evidence

Plaintiff argues that the ALJ's step-three determination is not supported by substantial evidence. (Pl.'s Br. at 22-28). Specifically, Plaintiff contends that the ALJ (i) incorrectly discounted the new medical opinion evidence from Plaintiff's treating doctors (*id.* at 23); (ii) failed to conduct "an actual medical equivalence analysis" (*id.*); and (iii) made conclusory statements, rather than combining and comparing Plaintiff's impairments, when determining if Plaintiff's combination of impairments medically equaled a listing (*id.* at 24-28). The Court is unpersuaded by these arguments.

### 1. New Medical Opinion Evidence

The Court finds that the ALJ's decision to give little weight to the new medical opinion evidence from Plaintiff's treating doctors is supported by substantial evidence. Generally, an ALJ must give great weight to the opinions of treating physicians, but "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. Further, an ALJ should accord a treating physician's

12

opinion "controlling weight" if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Thus, when rejecting the opinion of a treating doctor, an ALJ "must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Id.*

Here, at step three, the ALJ sufficiently articulated reasons for discounting the new medical opinion evidence, noting that it was inconsistent with other evidence in the record and that the new reports provided little explanation in support of their conclusions. (*See* Tr. at 416-17). Notably, each of the new reports consisted primarily of short statements or checkboxes indicating the Plaintiff's disability and limitations. (*See id.* at 551-56). First, the ALJ discounted Dr. Parziale's November 30, 2011 report because it was inconsistent with previous MRI evidence and Plaintiff did not have surgery for her cervical or lumbar spine conditions. (*Id.* at 413-14, 416-17). Next, the ALJ found that Dr. Ostella's December 6, 2011 opinion that Plaintiff could not work was inconsistent with the fact that records from (i) April 2010 and July 2011 indicate Plaintiff was looking for work (*id.* at 356, 403, 417); (ii) January 2010 indicate that Plaintiff expressed concerns that her part-time hours were decreased (*id.* at 375, 417); and (iii) February 2010 indicate that Plaintiff visited an unemployment office to seek assistance with retraining (*id.* at 359, 417). Finally, the ALJ gave little weight to Dr. Cooke's April 12, 2012 report because it provided "no specific details regarding these [physical] limitations or any mental limitations." (*Id.* at 417). ALJ O'Leary's reasoning that the new medical opinion evidence lacked supporting explanations and was inconsistent with other evidence in the record satisfies the requirement that the ALJ "give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli*, 247 F.3d at 43.

### *2. Medical Equivalence Analysis*

Plaintiff next argues that the ALJ did not conduct an "actual medical equivalence analysis." (Pl.'s Br. at 19-24). The Court disagrees.

The ALJ's finding that Plaintiff did not meet or equal the severity requirements of Listing 1.04 for spinal disorders during the relevant period is supported by substantial evidence:

- A March 2007 MRI of Plaintiff's lumbar spine showed no nerve root compromise or significant spinal stenosis. (Tr. at 219, 413).

- A March 2007 MRI of Plaintiff's cervical spine showed no nerve root compromise or significant spinal stenosis. (*Id.* at 218, 413).

- Plaintiff had MRIs in September 2008, after an automobile accident on August 4, 2008. (*Id.*). The cervical spine MRI showed no significant spinal cord abnormalities. (*Id.* at 328). The lumbar spine MRI showed disc bulging and facet hypertrophy at L5-S1, but no significant vertebral pathology. (*Id.* at 329). The ALJ noted a third lumbar MRI in 2010, which showed no changes since 2008. (*Id.* at 319, 413).

- Examinations by Dr. Parziale showed 5/5 strength in Plaintiff's upper and lower extremities, intact sensory functions, normal reflexes, and negative straight leg-raising bilaterally. (*Id.* at 282-302, 413).

- Todd Koppel, M.D., administered two lumbar epidural injections in 2008, but discharged Plaintiff from his care in December 2008, when he noted a 70 to 75% improvement in her activities of daily living as well as her range of motion. (*Id.* at 268-71, 416, 419). Plaintiff had no further treatment for her neck or back pain until January 2010, when she began acupuncture. (*Id.* at 313-16, 416).

- Plaintiff had an EMG/NRV study on April 8, 2010, that showed radiculopathy at L5-S1; but, on examination, Plaintiff had 5/5 strength in the upper and lower extremities (except for the left upper extremity due to a cast on her wrist), her sensation was intact, and her reflexes were symmetrical. (*Id.* at 323-27, 414).

The ALJ's finding that Plaintiff did not meet or equal Listings 3.02 and 3.03 is amply supported by the record. To meet Listing 3.02, Plaintiff must prove that her pulmonary testing meets the table values for pulmonary insufficiency according to the tables for height and FEV1 values. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §3.02. The ALJ considered that the record did not contain any pulmonary function test results. (Tr. at 414). Therefore, Plaintiff did not establish that she had chronic obstructive pulmonary disease of a severity to meet Listing 3.02. Listing 3.03

14

requires either (i) chronic asthmatic bronchitis that meets Listing 3.02A (pulmonary testing demonstrating insufficiency according to the tables); or (ii) attacks described in paragraph 3.00C,[2] in spite of prescribed treatment requiring physician intervention, occurring at least once every two months or at least six times a year.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.03.

The record demonstrates that Plaintiff was treated for two exacerbations of asthma during the relevant period, in March and July 2008.  (Tr. at 414).  Dr. Parziale continued Plaintiff on Advair and a rescue inhaler, and advised that she should work from home while her termination was pending.  (*Id.* at 298).  The ALJ noted that Plaintiff did not document asthma attacks occurring at least once every two months or at least six times a year as required by Listing 3.03.  (*Id.* at 414).  The only evidence of an asthmatic exacerbation after 2008 was a January 6, 2010 examination by Dr. Parziale, who noted that Plaintiff was getting over an episode of asthmatic bronchitis and weaning off Prednisone.  (*Id.* at 287).  On examination, Plaintiff's lungs were clear, and Dr. Parziale renewed Plaintiff's prescription for Albuterol.  (*Id.*).  Given the lack of evidence demonstrating the frequency of exacerbations required by Listing 3.03 (or any pulmonary function test results necessary to meet Listing 3.02 and 3.03), the Court finds that the ALJ's determination that Plaintiff could not meet or equal these listings is supported by substantial evidence.

The ALJ's finding that Plaintiff did not meet or equal listing 12.04 for an affective disorder is also supported by substantial evidence.  To meet or equal Listing 12.04, a claimant must demonstrate two "marked" limitations in (i) activities of daily living; (ii) social functioning; (iii) the ability to maintain concentration, persistence, or pace; and (iv) three episodes of

---

[2] Paragraph 3.00C provides that attacks of asthma, episodes of bronchitis, or pneumonia are defined as prolonged, symptomatic episodes lasting one or more days and requiring intensive treatment such as intravenous bronchodilator therapy in a hospital emergency room.  Hospital admissions are defined as longer than 24 hours.  The medical evidence for asthma should include reports of spirometry results in between attacks that document the presence of baseline airflow obstruction.

15

decompensation within one year, each lasting for at least two weeks. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ found that Plaintiff had a depressive disorder diagnosed in 2010 that prevented her from returning to her former skilled work as an accountant for the Prudential Insurance Company, but she could concentrate sufficiently to perform unskilled work that did not involve more than simple instructions. (Tr. at 418). The ALJ's findings are amply supported by the record:

- *Activities of Daily Living.* Though Plaintiff had a mild restriction in activities of daily living, Plaintiff told her therapist in January of 2010 that she was in an independent living situation and caring for her 13-year-old son. (*Id.* at 415). The therapist noted "good ADLs" and assessed a GAF of 70, indicating only mild difficulty in social or occupational functioning. (*Id.* at 391-92). Further, Plaintiff helped her son with his homework and helped with housework and other activities. (*Id.* at 415).

- *Social Functioning.* Though Plaintiff had mild difficulties with social functioning—a depressed mood and anxiety due to various stressors (loss of her job and a divorce)—she interacted appropriately with family, her treatment providers, and in group therapy. (*Id.*).

- *Ability to Maintain Concentration, Persistence, or Pace.* The ALJ found that Plaintiff had moderate difficulties with concentration, persistence, or pace. (*Id.*). The ALJ noted that although Plaintiff contended she had problems with her memory, chronic joint pain, and headaches that made it difficult for her to concentrate, the record showed she was treated only sporadically for headaches and there was no treatment for chronic joint pain. (*Id.*). Moreover, the ALJ considered that Plaintiff was able to maintain a position as an accountant for many years and was able to work two jobs for a period of two years. (*Id.*).

- *Three Episodes of Decompensation Within One Year, Each Lasting for at Least Two Weeks.* The ALJ considered that Plaintiff had experienced no episodes of decompensation of extended duration during the period at issue and that the record did not document any psychiatric hospitalizations or partial hospitalizations. (*Id.* at 414-15).

### 3. Combination Analysis

Plaintiff argues that the ALJ failed to comply with this Court's remand order and did not sufficiently analyze whether a combination of impairments medically equal a listing. (Pl.'s Br. at 24-28). The Court again disagrees.

When conducting a combination analysis at step three, an ALJ must consider whether a claimant's combination of impairments is equivalent to any listed impairment. *See Burnett*, 220

F.3d at 119. An ALJ fails to adequately consider the combination of the claimant's impairments when the ALJ only makes conclusory statements about the combination of impairments, precluding meaningful judicial review. *See Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008). The ALJ need not, however, "use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Thus, an ALJ need not explicitly discuss every applicable listing or combination of impairments at step three, so long as the opinion, read as a whole, indicates that the ALJ considered the proper factors in arriving at his ultimate conclusion. *See id*. Further, "an ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is 'no reason not to believe him.'" *Granados v. Comm'r of Soc. Sec.,* No. 13-781, 2014 WL 60054, at *9 (D.N.J. Jan. 7, 2014) (quoting *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 Fed. App'x. 186, 189 (3d Cir. 2008)).

Here, while ALJ O'Leary's combination analysis is confined primarily to one (long) paragraph (*see* Tr. at 416), the analysis therein and the entirety of the ALJ's decision supports that he considered the proper factors in arriving at his ultimate conclusion and his decision allows for meaningful judicial review. *See Jones*, 364 F.3d at 505. The ALJ's combination analysis is distinguishable from the conclusory analysis in *Torres* and in ALJ Dunn's decision. Both in *Torres* and in ALJ's Dunn's decision, the ALJs disposed of the combination of impairments analysis in one conclusory sentence. *See Torres*, 279 F. App'x at 152; (Tr. at 25). In contrast, ALJ O'Leary first noted that an "examination of the claimant's impairments individually shows that no one impairment is even close to meeting a listing." (Tr. at 416). He then listed record evidence to support his conclusion, including (among other things) that during the closed period at issue, Plaintiff (i) had "maximum medical improvement" in her back; (ii) "did not have any further

treatment for her neck or back pain until January 2010"; (iii) "did not have any neck or back surgery during the period at issue"; (iv) had no "frequent ER visits or hospitalizations due to asthma attacks"; (v) "had depression, but continued to live independently and perform activities of daily living"; and (vi) "worked part-time in 2009 and progress notes from January 29, 2010 suggest that she was unhappy that her part-time hours were decreased." *Id*. Further, ALJ O'Leary found that "even when obesity is considered in combination with the claimant's other impairments, the claimant does not equal or meet any of the applicable listings . . . ." (*Id.*).

The Court finds that, assessing the record as a whole, ALJ O'Leary's step-three determination is supported by substantial evidence because the ALJ performed an extensive review of the record evidence and clearly articulated reasons for how this evidence was weighed and credited.

### C. The ALJ's RFC Determination Is Supported by Substantial Evidence

To rule on steps four and five, an ALJ must make a RFC determination. 20 C.F.R. § 416.920(a)(4)(iv). Plaintiff contends that based on the new medical opinion evidence from treating doctors, the ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Br. at 28). Specifically, Plaintiff states that an ALJ must articulate sufficient reasons for rejecting evidence in the record (*id*. at 28-30), and may discount the opinions of treating physicians only with "adequate medical contradiction" (*id*. at 30-31). Plaintiff then argues that ALJ O'Leary's verbatim copying of ALJ Dunn's RFC determination does not meet these standards because it fails to sufficiently address the new medical opinion evidence. (*Id.* at 15-16, 32).

Defendant counters that the ALJ's RFC determination is supported by substantial evidence because the ALJ considered three opinion statements indicating that Plaintiff could not work: (i) Dr. Parziale's statement; (ii) Dr. Ostella's medical certificate in support of Plaintiff's

unemployment benefits application; and (iii) Dr. Cooke's form in support of public assistance. (Def.'s Br. at 13-14). Defendant further responds that the ALJ complied with the regulations for evaluating medical source opinions when he gave little weight to these opinions because they were either not supported by or inconsistent with the record. (*Id.* at 14).

The Court finds that ALJ O'Leary's RFC determination is supported by substantial evidence.[3] Plaintiff's contention that the two ALJs issued "the very same RFC, verbatim and word-for-word" (Pl.'s Br. at 15) ignores two single-spaced pages of ALJ O'Leary's independent RFC analysis (*see* Tr. at 418-21). ALJ O'Leary adopted ALJ Dunn's RFC determination, in part, because of his independent finding that (i) Plaintiff's "cervical and degenerative disc disease has not resulted in nerve root or spinal cord compromise"; (ii) Plaintiff "was discharged from Dr. Koppel's care in December 2008, having reached maximum medical improvement"; (iii) Plaintiff "had no neck or back surgery during the period at issue and did not have any further epidurals after 2008"; (iv) "there is no evidence of frequent ER visits or hospitalizations due to asthma attacks during the period at issue and no PFT reports"; (v) Plaintiff's "asthma was controlled with medications during the period at issue"; (vi) Plaintiff "had depression and painted a picture of herself as a virtual invalid who could not function at all due to her mental problems," but "she continued to live independently and perform the activities of daily living"; (vii) Plaintiff "worked part-time in 2009 and progress notes from January 29, 2010 suggest that she was unhappy that her part-time hours were decreased;" (viii) records from April 2010 indicate that Plaintiff was looking

---

[3] ALJ O'Leary notes that this Court's affirmance of ALJ Dunn's RFC determination is the law of the case. (Tr. at 421). Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The Court need not address the law-of-the-case doctrine, however, because it finds that ALJ O'Leary's RFC determination is supported by substantial evidence.

for work; and (ix) on July 26, 2011, Plaintiff "reported that she stopped looking for work because 'there is nothing out there.'" (*Id.* at 420).

Moreover, the ALJ articulated sufficient reasons for rejecting the new evidence in the record: he noted that (i) Dr. Parziale's opinion that Plaintiff can do almost no physical activity was inconsistent with MRI evidence and the fact that Plaintiff did not have surgery for her cervical or lumbar spine conditions; (ii) Dr. Ostella's opinion that Plaintiff could not work due to the combination of major depression and her physical impairments was inconsistent with Plaintiff's attempts to find employment and her expressed concern that her part-time hours had decreased; and (iii) Dr. Cooke's opinion (listing depression as Plaintiff's primary condition and mentioning of Plaintiff's osteoarthritis and asthma) provided no specific details regarding these limitations or any mental limitations. (*Id.* at 417). ALJ O'Leary concluded that "even if I did consider Dr. Pariziale's, Dr. Ostella's, and Dr. Cooke's opinions for the purposes of RFC analysis, I find that they deserve little weight under 20 CFR 404.1527, since they are inconsistent with the other medical evidence in the record and with the claimant's activities." (*Id.* at 421).

Given the record evidence that the ALJ highlighted, the ALJ's RFC determination is based on substantial evidence. The ALJ has provided sufficient relevant evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that Plaintiff had the RFC to perform less than the full range of light work. *Hartranft*, 181 F.3d at 360.

## V. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal. An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**